## YALOMSTEIN v. YALOMSTEIN.

1. DURESS—UNDUE INFLUENCE—MORTGAGES—INVALIDITY.

Where defendants took advantage of the fact that decedent's husband was in distress, and needed the provision made for him in the will of $10 per week, left to him under certain conditions, and, under pretext of securing to him the payment of the required sum, got him to execute in the form of a mortgage an assignment of his life insurance, releasing a claim he held against the estate for $3,000, and transferring all his assets, the court in chancery would treat the contract or mortgage as void and unconscionable, and, upon the bill of a second wife of the husband, would enforce complainant's rights as against the real estate on which it was made a charge and the heirs who had taken it over.

2. SAME—EVIDENCE—FRAUD.

While fraud will not be easily inferred, an .agreement that is obtained in such manner as to be of an unconscionable character may be more easily held to be fraudulent and void; a much less weight of the evidence is required in such case.

3. SAME—ESTATES OF DECEDENTS—CLAIMS.

Though as a general rule equity has no authority to audit and allow claims against a decedent's estate, an exception prevails in cases involving amounts that are certain or uncontested and where all the parties are before the court. KUHN and OSTRANDER, JJ., dissenting.

Appeal from Wayne; Van Zile, J. Submitted April 28, 1915. (Docket No. 84.) Decided March 31, 1916.

Bill by Anna Yalomstein against Moses Yalomstein and others for a decree declaring null and void certain instruments executed by complainant's husband in favor of defendants before his death. From a decree for complainant, defendants appeal. Affirmed.

*Selling & Brand,* for complainant.

*U. Grant Race* and *Walter F. Haass,* for defendants.

BIRD, J. This is a contest between the relict of Solomon Yalomstein and the administrator of the estate of a former wife of Solomon, the administrator of the estate of Solomon Yalomstein, and the heirs of Solomon. The case was heard in the Wayne circuit court, and upon its conclusion the chancellor rendered an opinion therein, which so nearly coincides with our view of the matter, that we have concluded to adopt it as the opinion in the case. The opinion follows:

"As a matter of fact, I find that Solomon Yalomstein was the husband of Rebecca Yalomstein; that Rebecca Yalomstein died in the city of Detroit, Wayne county, Mich., September 25, 1906; that at the time of her death she owned and possessed a large amount of real estate, described in the bill of complaint herein, and left a will, which is also set out in said bill of complaint, by which she willed all her property to her children born of the marriage of herself and Solomon Yalomstein; the names of these children appear in the copy of the will set out in the bill of complaint; that by the said will it was provided that Solomon Yalomstein was to be paid $10 per week "providing he does

not live with the children"; this will was executed
July 11, 1905; that upon the death of Rebecca her
will was admitted to probate October 31, 1906, and
Moses Yalomstein was appointed administrator with
the will annexed. I find, further, that on the 26th day
of January, 1907, Solomon Yalomstein, and the com-
plainant in the bill of complaint, Anna Yalomstein,
were married, Anna being a sister of the first wife,
Rebecca; that the marriage of Solomon and Anna cre-
ated dissatisfaction between the children of Rebecca
and Solomon and his wife, Anna; that Solomon was
not receiving the $10 per week as stipulated, and as of
a right he was entitled; that the heirs had taken over
a large amount of real estate which was charged with
the burden of paying this legacy; and that it thereby
became a charge against the devisees of the estate of
Rebecca (*Stringer* v. *Gamble*, 155 Mich. 295 [118 N.
W. 979, 30 L. R. A. (N. S.) 815]); that during the
lifetime of Rebecca, his first wife, and for her benefit
and to assist her in clearing the incumbrances on her
property, but not as a volunteer, Solomon Yalomstein
furnished some $3,000 to discharge the property of a
mortgage held by the Dime Savings Bank, and obtained
the discharge of said mortgage; that said advance of
$3,000 became a claim against the estate of Rebecca
at her death; that after the second marriage of Solo-
mon, and after he filed a claim for the $3,000, the
heirs ceased to pay the allowance of $10 per week;
that Solomon was in financial stress, and while this
situation was upon him the heirs of Rebecca, defend-
ants herein, by undue influence, fraud, and duress, ob-
tained from him by way of a so-called mortgage and
agreement embodied therein a release of his claim
against the estate of Rebecca and of all his life insur-
ance interests—indeed, of everything he had or could
hope to have on this earth. This mortgage, so called,
was given as a pretended security to him for the pay-
ment of the said $10 per week legacy in the will of
Rebecca. This mortgage is most unconscionable, is
without consideration, and void.

"On the 4th of May, 1908, Solomon Yalomstein
committed suicide in New York. Upon his death and
upon the 15th day of July, 1908, one of Rebecca's heirs,
Birdie Sallan, was appointed administratrix of the es-

tate of Solomon Yalomstein. After the appointment of Birdie Sallan as administratrix the heirs of Rebecca filed a claim against the estate for a claimed breach of the agreement and covenants in the said mortgage agreement attached to the bill of complaint, claiming, among other things, that they were unable to recover the life insurance on the life of Solomon turned over to them by said agreement; that, strangely enough, the commissioners on claims allowed the claim of said heirs at the same amount that Solomon paid on Rebecca's mortgage to the Dime Savings Bank ($3,000), and for more than enough to absorb the insurance money that the Bankers' Life insisted on paying the administratrix of Solomon, repudiating the mortgage agreement.

"The court, in arriving at the conclusions herein stated as to facts, is constrained to say that it has in mind the rule of law that fraud will not be inferred, but has also applied the rule of evidence that in equity cases where from the condition of the parties and the agreements brought about it is bound to determine that such agreements are unconscionable and without consideration. In such cases a very much less weight of evidence is required to prove fraud and undue influence. The case, in my judgment, abounds in unconscionable acts and forced agreements. These heirs cannot escape the responsibility for their unjust demands. There are facts enough admitted in the answer filed in this case to challenge the attention of a court of equity, and demand its aid and protection.

"As a matter of law, the court finds that the so-called mortgage or mortgage agreement be set aside and be declared to be null and void; that the estate of Solomon Yalomstein has a just and legal claim against the estate of Rebecca Yalomstein in the sum of $3,000, and interest from October 24, 1904; that said amount be therefore allowed and adjudged to be a lien against the real estate of said Rebecca Yalomstein, deceased, not transferred to *bona fide* purchasers; that the claim for $3,000 allowed by the commissioners of the estate of Solomon Yalomstein be decreed to be illegal, null, and void; that the agreement upon the part of Solomon Yalomstein to transfer the life insurance mentioned in said mortgage agreement to the heirs of Rebecca Yalomstein be declared to be null and void; that the

estate of Solomon Yalomstein should be collected and distributed in accordance with the statute of distribution by the probate court of this county; that costs be not allowed to either party."

It will be noticed in the foregoing opinion, that the chancellor allowed the claim of Solomon Yalomstein for $3,000 against the estate of Rebecca. This is questioned by appellants upon the ground that a court of chancery has no power to audit a claim against the estate of a deceased person. This undoubtedly is the general rule, but exception to this rule has been made where the amount of the claim is not contested, and where all the parties to be affected by it are before the court. *Clay* v. *Layton,* 134 Mich. 317 (96 N. W. 458). In the case under consideration, if the claim is to be allowed for any amount, there is no contention but what it should be allowed for the $3,000, the amount which Solomon advanced to his wife, Rebecca, to pay the mortgage. The parties to be affected by allowance or disallowance are all before the court, and we can see no reason why it was not within the province of the chancellor to dispose of the whole question while it was before him. In this case the question is raised incidentally to other questions as it was in the case cited.

It is also insisted that there was no evidence of fraud upon which the court could predicate his finding. We agree with the chancellor that the record fairly shows that Solomon's necessity was taken advantage of to force from him the assignments of his insurance policies and the waiver of his claim against the estate of his former wife. We think it is safe to say that, had they been paying him promptly his $10 per week, as provided by the will, he would not have voluntarily made the conveyances which he did.

The decree of the lower court is affirmed, with costs of both courts to complainant.

STONE, C. J., and MOORE, STEERE, and BROOKE, JJ., concurred with BIRD, J.

OSTRANDER, J. In my opinion, the court was without jurisdiction to allow or disallow claims against estates.

KUHN, J., concurred with OSTRANDER, J.

The late Justice MCALVAY took no part in this decision.